WASHINGTON AMERICAN LIFE IN-
SURANCE COMPANY, Appellant,

v.

The STATE of Texas, Appellee.

AMERICAN INSURANCE MANAGE-
MENT SERVICE, INC., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 12563, 12567, 12564 and 12570.

Court of Civil Appeals of Texas,
Austin.

Jan. 5, 1977.

**292**

H. Lee Godfrey, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellants.

John L. Hill, Atty. Gen., Thomas A. Rutledge, David W. Pace, Asst. Attys. Gen., Austin, for appellee.

PHILLIPS, Chief Justice.

The Attorney General of Texas initiated a *quo warranto* proceeding in the court below on November 16, 1976, that resulted in placing both Washington American Life Insurance Company and American Insurance Management Service, Incorporated, the appellants in the above-styled cases, in receivership without notice and hearing. Both of these appellants perfected their appeals from the interlocutory *ex parte* order of receivership. Appellants also filed a motion to dissolve the *ex parte* order which was denied by the trial court. Appellants then sought a writ of injunction from this Court protecting them from the orders entered below. After appellants filed their applications for the emergency relief here, the trial court after hearing entered orders continuing the temporary injunction granted and also continuing the temporary ancil-

lary receivership. Appeals were then perfected from these orders.

On motions by appellants, the appeals from the various orders of the trial court described above were consolidated for purposes of review by this Court. We deny appellants any relief in staying the orders of the trial court, and further, the judgment of the trial court is in all respects affirmed.

Although both appeals were briefed and argued separately, we will dispose of them in this opinion.

Appellant Washington American Life Insurance Company will be referred to hereafter as Washington American, and American Insurance Management Service, Incorporated, will be referred to as AIMS.

In its order of November 16, 1976, the trial court found it necessary to enter an order, without notice, directing the statutory liquidator for the State Board of Insurance, as temporary ancillary receiver, to take charge of and preserve and protect the property, assets and records of both appellants and to conduct their affairs pending final hearing on the State's original petition; and that both appellants, their officers, directors, agents, employees and representatives, should be restrained from conducting the business of insurance or any other business by both appellants under any permit, certificate of authority, power or privilege of these appellants; and further, issued a temporary restraining order against any bank, person, firm, association or corporation from disposing of any of the assets or properties of these appellants pending a final determination herein.

The court further found that Washington American was engaging in business in Texas without a permit or certificate of authority, appeared to be insolvent or in immediate danger of insolvency; that unless temporarily restrained would continue to operate in its apparently insolvent condition in violation of the laws of this State and continue to engage in business and create debts and obligations and deplete its assets, all contrary to the best interests of its policy-

holders, creditors and the general public; and that immediate and irreparable injury, loss and damage would result to the policyholders, creditors and the general public before notice could be served and a hearing had hereon, unless appellant was restrained pending hearing.

The court further found that AIMS was exercising powers in excess of those authorized by law and that it would continue such operations in violation of the laws of this State unless restrained. Then the order pertinent to AIMS, for the most part, tracks those findings made in the public interest set out above with respect to Washington American.

The court ordered the appointment of a temporary ancillary receiver so that during the duration of these proceedings the servicing of policies of policyholders could be continued and the legal obligations of the appellants could be supervised.

The court set a supersedeas bond in the amount of $232,000 for Washington American and $2,000,000 for AIMS.

## I

Appellant Washington American contends that it is a foreign corporation chartered in the state of Arizona, that it is domiciled in Arizona and has issued no insurance policies, and further, that it has acted as a *reinsurer* of insurance policies issued by Old Security Life Insurance Company, a Missouri company licensed to do business in Texas.

It should be noted at this point that Old Security Life Insurance Company has been placed under supervision by the Insurance Commissioner of this State.

In its points of error, appellant Washington American complains of the orders of the court below contending that there is no statutory authority therefor, and further, that appellant's "insolvency" or "imminent insolvency" are merely conclusions utterly without supporting allegations of fact.

■ We do not agree. The evidence discloses that although it has not issued insurance policies under its own name, it has agreed to perform all the terms and to assume all the obligations of group policies issued by the Old Security Life Insurance Company in the state of Texas, pursuant to an agreement between the two companies.

Although Washington American claims to be domiciled in Arizona, its principal business was conducted in Texas and its primary office was located in Texas. A preliminary examination by examiners from the states of Arizona and Texas revealed credible evidence that its capital had been impaired, that it was insolvent under the laws of the state of Arizona, and further that it had never paid any franchise taxes to the state of Texas.

While the examination was in progress, it was stayed by an order of the district court in Dallas, during which time appellant's books and records were removed from its offices in Dallas and whisked away to Arizona. It was not until the dismissal of the Dallas court's order that the examiners found that the records had been removed even though their examination had not yet been completed.

■ Appellants have insisted strenuously in both their briefs and in oral argument that Washington American is not insolvent. They have pointed to certain company assets that were disallowed by the Arizona examiner for one reason or another, arguing their validity. In view of the fact that, presumably, a hearing will be held on the question of the granting of a permanent injunction and also in view of the fact that, by its own act, Washington American has put its books and records beyond the reach of the State of Texas, we are inclined, at this stage of the proceedings, to accept the findings of insolvency at face value.

■ This brings us to the questions of the validity of the temporary injunction and the subsequent temporary receivership. Although appellants also appealed from the *ex parte* peremptory orders, inasmuch as they elected to file their answers and introduce evidence at the hearing for temporary receiverships and injunctions, any defects attendant to the initial orders have been

waived. *Sheppard v. Jacksboro Refining Co.*, 123 S.W.2d 497 (Tex.Civ.App.1938, writ dism'd jdgmt cor.).

Article 2293, Vernon's Civil Statutes, authorizes the appointment of a receiver in "cases where a corporation is insolvent or in imminent danger of insolvency" and "all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

■ The question of whether to appoint a receiver is addressed to the sound discretion of the court and in the absence of a clear abuse of that discretion, the appointment will not be disturbed on appeal. *Collegiate Recovery and Credit Assistance Programs, Inc. v. State*, 525 S.W.2d 900 (Tex. Civ.App.1975, no writ). We hold that, based on the evidence adduced at the temporary injunction hearing, the trial court did not abuse its discretion in granting the temporary injunction [1] or in appointing a receiver for appellant either under Article 2293, V.C.S., or under the general usages of equity. When a corporation such as appellant has been restrained in the public interest from conducting business, receivership proceedings are within the discretion of the trial court and usually follow, *Manning v. State*, 423 S.W.2d 406 (Tex.Civ.App.1967, writ ref. n. r. e.)

We also overrule appellant's point that the trial court abused its discretion in setting a supersedeas bond of $232,000. See this Court's opinion in *Moody v. Crook*, 520 S.W.2d 958 (Tex.Civ.App.1975, no writ).

## II

Appellant American Insurance Management Service, Incorporated, or AIMS, contends that it has a lawful certificate of authority to do business in Texas and that there is no statutory authority for putting it into receivership.

Appellant AIMS' basic argument is that it had been hired by Old Security Life Insurance Company to perform certain administrative services for and on behalf of Old Security under a standard administrative agreement and that it is exempt from licensing under the Texas Insurance Code. Old Security has a license to write life, health and accident insurance in Texas.

■ The State contends that the arrangement between Old Security and appellant was a subterfuge whereby appellant did a complete business of insurance in the name of Old Security. For this, Old Security paid appellant a fee and in return received a reinsurance premium from Washington American which shared offices with appellant and routinely reinsured all policies administered by appellant in the name of Old Security. The State contends, and we agree, that in economic reality, appellant issued policies and did a complete business of insurance in the name of Old Security, at a time when appellant AIMS was not licensed to conduct an insurance business in Texas.

From a review of the record it is readily apparent that AIMS performs and conducts every possible transaction, step by step, involving the writing of group life, health and accident insurance whether as a principal or as an agent.

The testimony discloses that Old Security was not supervising AIMS' activities in Texas; nevertheless, AIMS was finding and receiving specifications from potential policyholders, underwriting and determining what premiums should be charged for such a policy based on those specifications. They were then putting those specifications in a proposal and sending it to the potential policyholder. They were receiving back applications from the potential policyholders. They were then going through post-sale underwriting to determine whether or not the applications conformed to the original specifications on which the rate structure had been determined. If it had, they were issuing policies and individual certificates to the individual certificate holders under the policy. They were billing premiums due, at

---

1. Under this record injunction lay to preserve the status quo. 31 Tex.Jur.2d *Injunctions* § 38 (1962), n. 18 and cases there cited.

least under some of the policies. They were collecting premiums from those policies which they billed and they were paying claims on the policies.

We hold that all of these activities fall within the ambit of conduct for which either an agent's or principal's license is required under the Texas Insurance Code, Articles 1.14–1 and 21.01 through 21.07.

■ We also hold that an injunction prohibiting such activities on the part of AIMS lay by virtue of *quo warranto*,[2] Article 6253, V.C.S., and Article 4409, V.C.S., which provides that the Attorney General shall also inquire into the charter rights of all private corporations and, in the name of the State, take such legal action as may be proper and necessary to prevent any private corporation from exercising any power not authorized by law. Also see this Court's opinion in *Day v. State,* 489 S.W.2d 368 (Tex.Civ. App. 1972, writ ref. n. r. e.).

The resulting receivership is authorized by Article 21.28 of the Texas Insurance Code.

■ We also overrule appellant's point that the $2,000,000 supersedeas bond was, for all practical purposes, a denial of supersedeas. Under the facts of this case we are unable to hold that the trial court abused its discretion in setting the bond.

In the first place, Washington American and appellant AIMS had their affairs so inextricably intertwined that it was necessary for the examiners to go into one another's records for an examination of claims and premiums. As mentioned above, at this point in the proceeding Washington American's records are unavailable for scrutiny. The record also reflects that part of the premium income designated for Old Security went into AIMS accounts. The bond was apparently set to guarantee that insurance policyholders whose premium payments were received and disbursed by AIMS, at its discretion, would be secure in all events. For the month of September, 1976, alone, AIMS was responsible for managing over $4,000,000 in earned premiums. These were received and disbursed at its discretion, unsupervised by Old Security. The record also disclosed that AIMS' administrative and other expenses exceeded earned premium income. *Moody v. Crook, supra.*

The judgment of the trial court is in all things affirmed.

Affirmed.

2. See *Staples v. State,* 244 S.W. 1068 (Tex.Civ. App.1922, no writ).