**B & W CATTLE COMPANY, Appellant,**

v.

**FIRST NATIONAL BANK OF HEREFORD, et al.,**
**Appellees.**

**No. 07–85–0018–CV.**

Court of Appeals of Texas, Amarillo.

June 19, 1985.

Rehearing Denied July 8, 1985.

Wolfram Law Firm (Jackson Walls), Amarillo, for appellant.

Witherspoon, Aiken & Langley (James W. Witherspoon and Richard Forrest), Hereford, for appellees.

Before REYNOLDS, C.J., and COUN-TISS and BOYD, JJ.

REYNOLDS, Chief Justice.

By 18 points of error, B & W Cattle Company, a partnership composed of Ben Byrd and Billy Jack Wright, presents its central contention that the trial court erred in appointing a receiver for its livestock. We affirm.

First National Bank of Hereford brought an action, which underlies this appeal on the ancillary matter of receivership, to recover the amounts due on four promissory notes, three of which were executed by Byrd individually and one being executed by him for Byrd and Wright d/b/a B & W Cattle Company. The payments of the notes were alleged to be secured by security interests in various properties, including livestock owned by Byrd individually and by Byrd and Wright d/b/a B & W Cattle Company. Contemporaneously therewith, the bank applied for, and was granted on an ex parte hearing, a writ of sequestration to secure official possession of certain described livestock. By authority of the writ, the sheriff took possession of livestock identified in the writ.

Byrd, who was the managing partner of the partnership, moved to dissolve the writ of sequestration. Wright moved to both quash and dissolve or, alternatively, to modify the writ, alleging among other things that the writ made no distinguishment between the cattle of the B & W Cattle Company partnership and nonpartnership cattle of a joint venture between him and his father which were not pledged as collateral, but which were wrongfully sequestered by the sheriff.

At times before and after the dissolution and quashal motions were filed, seven other parties, individuals and business entities, intervened in the cause, claiming various interests in the properties listed in the bank's security agreements. In the pleadings filed in the cause, each party to this appeal and each intervenor, in addition to seeking specific relief, prayed for general relief.

At the beginning of the hearing on the motions in the presence of the parties to this appeal and the intervenors, the court announced that the matter before it was the question of the dissolution of the writ of sequestration and, if the sequestration was good, the bank's motion for a determination of what should be done with the cattle pending the outcome of the lawsuit. After hearing the evidence, the court announced, in essence, that: (1) the affidavit for the writ of sequestration was insufficient; (2) there was a need for protection of the sequestered cattle, which (3) should not be returned to Byrd; and (4) the non-partnership cattle sequestered should be released to Wright.

Then the court, responding to comments of Mr. Walls, the attorney for Wright and the B & W Cattle Company, that the bank's conversion of some 870 head of cattle has a direct bearing on the previous conversation about a receivership for various cattle, said:

All right. But I am not going to turn those cattle loose, and you are telling me you don't want me to.

To which Mr. Walls replied:

I am telling you I don't want you to. Shortly thereafter, the court, conversing with the bank's attorney, who had mentioned the appointment of a trustee, invited and received a motion from the bank that a trustee be appointed with full authority to deal with the cattle.

Whereupon, Byrd's attorney stated to the court, "If you could designate it a receiver, it would be better," and the court said "I like that word better." Then the court proposed that an order appointing a receiver be drawn and circulated for com-

ment, to which Mr. Walls replied, "That's fine."

Thereafter on the day of the hearing, the court signed an order modifying the writ of sequestration by providing that 133 head of cattle seized from three named locations be surrendered to Wright. Two days later, the court, finding that the affidavit and application in support of the writ of sequestration and the proof thereof were inadequate, signed an order dissolving the writ of sequestration, thereby ordering the sequestered cattle surrendered to Byrd and Wright d/b/a B & W Cattle Company or their authorized representatives.

Three days after the hearing, the court, reciting that it heard no objection to the appointment of a receiver for the benefit of all claimants in the pending cause, signed an order appointing a receiver for the sequestered cattle ordered to be surrendered to Byrd and Wright d/b/a B & W Cattle Company the previous day. Four days afterwards, the court, again making the recitation of no objection, signed a designated nunc pro tunc order appointing the previously named receiver in the same language, but adding that the receiver is authorized to employ counsel to represent him. In each order, the court stated that the ancillary appointment of the receiver is for the purpose of preservation, care and orderly disposition of the livestock.

By 18 points of error, B & W Cattle Company attacks the receivership orders as well as their supporting findings of fact and conclusions of law made and filed by the court. In short, the partnership contends that the court erred in appointing a receiver because (1) there are no pleadings for a receivership, thereby denying the partnership notice of, and an opportunity to be heard on, the issue, which is a denial of constitutional due process; (2) the factual findings and legal conclusions related to the receivership are not supported by pleadings and evidence; (3) there is no admissible evidence to support the finding and conclusion that the partnership agreed to the order appointing a receiver, and particularly no evidence that the nunc pro tunc

order was agreed to; and (4) the factual findings and legal conclusions were not timely made or filed; and, further, the court erred (5) in making certain related findings and the conclusions drawn therefrom which are dispositive of ultimate issues in the underlying, pending causes of action; and (6) in not making itself available for additional or amended findings of fact and conclusions of law germane to the appeal, which denied the partnership the right to relief on appeal. The material contentions raised by the partnership's points will be addressed generally rather than seriatim.

The judge of the trial court is statutorily authorized to appoint a receiver in certain cases, among which are:

1. In an action by a ... creditor to subject any property or fund to his claim ... on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured; or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt.

\* \* \* \* \* \*

4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity.

Tex.Rev.Civ.Stat.Ann. art. 2293 (Vernon 1971). The statute broadens the rights to a receiver as recognized in courts of equity by expressly specifying in the first three subdivisions the situations in which receivers may be appointed. *Anderson & Kerr Drilling Co. v. Bruhlmeyer,* 134 Tex. 574, 136 S.W.2d 800, 806 (1940). Its antecedent was enacted in 1887 and soon construed as applying only to the funds and property upon which the creditor has a lien for the satisfaction of his debt, *Carter v. Hightower,* 79 Tex. 135, 15 S.W. 223, 224 (1890), the construction given to the present statute. *Parr v. First State Bank of San Diego,* 507 S.W.2d 579, 582 (Tex.Civ.App.—San Antonio 1974, no writ).

■ Citation of the numerous authorities is not required for the axiom that receivership is a harsh remedy to be applied cautiously, and preferably only after a noticed hearing on appropriate pleadings in conformity with procedural rules. Still, a receiver may be appointed when the facts justify the appointment to preserve or protect the property or fund in litigation without an application therefor by any party, *Hunt v. State,* 48 S.W.2d 466, 469 (Tex.Civ. App.—Austin 1932, no writ); *Scales v. Grassman,* 264 S.W. 136, 137 (Tex.Civ.App. —1924, no writ), and on the court's own motion. *Greater Fort Worth v. Mims,* 574 S.W.2d 870, 871 (Tex.Civ.App.—Fort Worth 1978, writ dism'd).

When the partners of B & W Cattle Company moved for the dissolution or modification of the writ of sequestration, the court, in making its determination of the motions, was authorized to

> make all such orders, including orders concerning the care, preservation or disposition of the property (or the proceeds therefrom if the same has been sold) as justice may require....

Tex.R.Civ.Pro. 712a. Acknowledging the authority given, the court found from the evidence that dissolution of the writ of sequestration without appointment of a receiver would likely cause irreparable injury to the bank, and included findings of fact necessary for a receivership under the principles of equity.

■ Moreover, during the hearing, there was evidence adduced from which the court was entitled to find, as it did in its factual finding expressions, that, among other facts, (1) the bank had a perfected security interest in the livestock of Byrd and the partnership, that (2) the value of the livestock is less than the claims of the bank and the intervenors against the livestock,

that (3) Byrd could not identify with particularity the locations of the livestock securing the payment of the bank's notes, that (4) some of the livestock had been removed by third parties without the bank's consent, and that (5) the livestock could be lost or materially injured absent appointment of a receiver. Thereupon, the court recited, as a conclusion of law, that the receiver is appointed pursuant to paragraphs 1, 2 and 3 of article 2293, *supra.*

The appointment of a receiver under subdivision 1 of article 2293, *supra,* was authorized if the bank or another party has shown (1) a probable right to or interest in the property or fund, and (2) the property or fund is in danger of being lost, removed or materially injured. *Anderson & Kerr Drilling Co. v. Bruhlmeyer, supra.* The evidential showing of the factual findings stated in the foregoing paragraph is sufficient to authorize the court's appointment of a receiver, *Whitson Co. v. Bluff Creek Oil Co.,* 256 S.W.2d 1012, 1015–16 (Tex.Civ. App.—Fort Worth 1953, writ dism'd), unless, as the partnership is contending, either the absence of written pleadings for the receivership or the lack of evidence to support the court's factual findings is fatal to the appointment.

■ We first consider the challenges to the legal and factual sufficiency of the evidence. As a threshold matter, we observe that it does not avail the partnership to argue that the court's factual findings and legal conclusions should be declared void and set aside because they were not timely made or filed. Since the findings and conclusions were included in the transcript, the partnership suffered no injury by reason of the late filing. *Bostwick v. Bucklin,* 144 Tex. 375, 190 S.W.2d 818, 819 (1945). Beyond that, if we were to honor the partnership's request to declare the findings and conclusions void and set them aside, then we would be obligated to presume that all questions of fact are found in support of the receivership order and affirm it if it can be upheld on any legal theory that finds support in the evidence.

*Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex. 1977).

When we look to the points of error by which the partnership challenges the legal and factual sufficiency of the evidence to support the court's findings, we discover the basis of the challenges is that there is no admissible evidence on which the findings can be made. This obtains, the partnership argues, since the evidence touching on the receivership was objected to because there is nothing in the pleadings that makes the issue relevant to the issue of sequestration, and the court was informed that the issue was not going to be tried by consent.

■ Initially, when we turn to the referenced objections in the record, it seems clear that the evidence objected to was, as confirmed by explanations given in some of the objections, adduced in justification of the application for and the issuance of the writ of sequestration. Insofar as the record reflects, the matter of receivership had not been mentioned at the times the objections were made. Next, we notice that the objections referred to were overruled, and the partnership does not complain of the court's rulings by points of error; consequently, the propriety of the court's ruling the evidence admissible has not been preserved for our consideration. *Aetna Life Insurance Company v. Wells,* 566 S.W.2d 900, 901 (Tex.1978).

Notwithstanding the foregoing and the reality that the partnership's challenges to the legal and factual sufficiency of the evidence are based only on the ground the receivership evidence was inadmissible for the lack of pleadings, a "no evidence" situation, we have reviewed the evidential record under the standards of review articulated in *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Having done so, we find some evidence of probative force to support the court's material findings for the appointment of a receiver, and we do not find that the evidence supporting those findings is so weak, or the contrary evidence so overwhelming, that the findings should be set aside.

■ This determination, then, brings us to the question whether written pleadings for a receivership were required in this cause to validate the appointment. Subdivision 1 of article 2293, *supra,* one of the authorizations cited by the court for appointing the receiver, predicates the appointment "on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable." Although a proper written application is preferable for obvious reasons, and a verified one is required for an ex parte appointment, *Hunt v. State, supra,* at 468, the statute itself does not call for a written application. Indeed, the *Hunt* court, speaking to the sufficiency of an application for appointment of a receiver within the provisions of subdivision 1, said, "The appointment of a receiver is ... a power vested in the discretion of the trial court, however, and where the facts justify it, the court has the inherent power to make such appointment without application of either party." *Id.* at 469. We previously held in this appeal that the facts recited were sufficient to justify the appointment of a receiver.

However, in this cause there is more than justifiable facts. As noted, at the end of the hearing, B & W Cattle Company, through its counsel, confirmed that it did not want the court to turn the cattle loose. Then, when the court entertained the bank's motion for the appointment of a trustee, counsel for Byrd, a party who had a right to or interest in the livestock, essentially moved for, and the court accepted, an amendment to provide that a receiver be appointed with full authority to deal with the cattle. In our view, and we hold, this was a sufficient application within the meaning of subdivision 1 of article 2293, *supra,* for the appointment of a receiver.

■ Moreover, B & W Cattle Company's complaints of the absence of pleadings for the receivership ordered come too late. As we have just noted, B & W Cattle Company told the court, in essence, not to lose control of the cattle; and, as we have just held, Byrd, designated in the record as the managing partner of B & W Cattle Company, applied, through his counsel, for the appointment of the receiver. B & W Cattle Company itself made no objection; instead, it informed the court, through its counsel, "That's fine," when the court proposed the receivership order be drawn and circulated. It long has been established that one who invokes the jurisdiction of the court to appoint a receiver of his property cannot thereafter question the validity of the appointment for want of jurisdiction. *Spence v. State Nat. Bank,* 5 S.W.2d 754, 756 (Tex.Comm'n App.1928).

■ Although B & W Cattle Company does not charge the trial court with an abuse of discretion in appointing the receiver, in the final analysis the question whether to appoint a receiver, either as authorized by statute or usages of equity, is left to the sound discretion of the trial court. *Washington Am. Life Ins. Co. v. State,* 545 S.W.2d 291, 294 (Tex.Civ.App.—Austin 1977, no writ). The question is determined not by the substitution of the appellate court's judgment for that of the trial court, but by whether the trial court's decision was arbitrary or unreasonable. *Landry v. Travelers Insurance Company,* 458 S.W.2d 649, 651 (Tex.1970). Having reviewed and considered the record, we cannot say that the trial court's decision was either arbitrary or unreasonable.

In reaching our affirmance of the court's receivership order, we have considered all of B & W Cattle Company's points of error, albeit a few of them are not directly addressed. They all are overruled without further discussion except for one other matter.

■ The partnership has expressed concern that by some of the factual findings and legal conclusions, the court has disposed of ultimate issues in the underlying causes of action. It suffices to state that a receivership neither destroys a prior valid right nor determines any contractual rights between the parties. The rights remain enforceable; the enforcement of the rights is merely suspended until enforcement is approved by the court having custody of

the property. *First Southern Properties, Inc. v. Vallone,* 533 S.W.2d 339, 343 (Tex. 1976).

The judgment of the trial court is affirmed.