

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-18-00024-CV

---

JEFFREY M. TEMPLETON,
DIRECTOR AND SHAREHOLDER

APPELLANT

V.

RKR INVESTMENTS INC., A
NEVADA CORP.; RKR
OPERATIONS, INC., A TEXAS
CORP.; RKR TECHNOLOGIES,
LTD., A TEXAS LIMITED
PARTNERSHIP; AND BOB REECE,
AS TRUSTEE OF THE BOBBY
NEALE REECE REVOCABLE
TRUST

APPELLEES

----------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 048-290383-17

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

In this interlocutory appeal, Appellant Jeffrey M. Templeton (Templeton) raises four issues challenging the trial court's order appointing a receiver for Appellee RKR Investments, Inc. (Investments). Because the trial court did not abuse its discretion by appointing a receiver, we will overrule Templeton's first and fourth issues. Because we lack jurisdiction over Templeton's second and third issues, we will dismiss them, and we will affirm the trial court's order.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Jon Hill is Investments' president. Investments manufactures and sells aerospace fasteners; it was restructured to its current organizational status in 1998. Investments is a Nevada corporation and currently has two directors: Templeton and Bob Reece. Templeton, as the independent executor of Charles Ramsey's estate, owns approximately 40% of Investments' shares. Appellee Bob Reese, as trustee of the Bobby Neale Reece Revocable Trust (Reece), owns approximately 41% of Investments' shares.

Templeton—who is a CPA—filed suit as a director of Investments seeking to access the books and financial records of Investments and its subsidiaries for an audit. The lawsuit prompted settlement discussions and a Rule 11 agreement, which Templeton and Investments read into the record. The Rule 11 agreement provided, in pertinent part, that Investments would conduct a "data pull with administrative access on QuickBooks and put the data on a CD" to be delivered to Templeton in seven days, with the same data pull to take place each

month thereafter, and would engage in a good-faith, full-day mediation before pursuing any further litigation that might arise out of the Rule 11 agreement.

Eventually, Reece filed a petition in intervention seeking the appointment of a receiver pursuant to Nevada law and sought other relief. According to Reece, the parties had previously agreed to sell Investments, and Templeton was thwarting the sales process. According to Templeton, if the sale is consummated before an audit, any wrongdoing that had occurred in the management of Investments' and its subsidiaries' funds would be forever lost in the transaction.

The trial court conducted hearings on Reece's request for a receiver to be appointed pursuant to Nevada law, as well as on several other pending motions—including Templeton's motion to strike the petition in intervention and a request for the appointment of a custodian. The trial court eventually received testimony from Hill and Templeton[2] and stipulations from the parties. Hill testified that Investments had incurred $495,000 for legal and accounting fees associated with this lawsuit.

At one of the hearings on October 31, 2017, Templeton agreed in his opening statement that a third-party neutral was needed to help the companies decide the next steps—sell, audit, or both—but suggested that a custodian rather

---

[2]The trial court excluded Templeton's expert, Lisa Lott, from testifying at the hearing due to Templeton's failure to disclose Lott as a witness. Templeton made an offer of proof but does not challenge the trial court's ruling excluding Lott's testimony.

3

than a receiver be appointed, and that the third-party should primarily be concerned with an audit and not simply consummating a sale.[3] The parties went off the record to try to resolve their dispute and then placed the following agreement on the record:

> THE COURT: I am. Let me see if I understand the basic outline of an agreement between the parties without taking or contracting. The parties have agreed that pursuant to the applicable Nevada law that a receivership -- that facts exist for the appointment of a receivership in this case is first.
>
> [TEMPLETON'S COUNSEL]: Yes.
>
> THE COURT: Then, number two, that the parties have not reached an agreement on the form or substance of the order appointing the receiver.
>
> [TEMPLETON'S COUNSEL]: Correct.
>
> [REECE'S COUNSEL]: That is correct.

---

[3]Templeton's counsel argued:

And there are several points of agreement, so let me kind of go to the points of agreement, see if that shortens this. We do agree there is a deadlock. We do agree Nevada law applies. We suggest that the Nevada statute that applies is the one that's directly on point, which appoints a custodian.

. . . .

. . . And our suggestion is to appoint a custodian to get to the bottom of -- if there is nothing there, fine, but we think a custodian needs to be appointed under Nevada law to determine what's there, is there anything there. So regardless of what we call this person, we all agree a third party should be appointed.

4

THE COURT: Each party will -- having stipulated that the facts exist for the appointment of a receiver, will submit to me a form of an order that they would like to see entered by Thursday, November the 2nd, at 5:00 p.m., by electronic filing.

[TEMPLETON'S COUNSEL]: Correct.

THE COURT: Is that correct?

[REECE'S COUNSEL]: That's correct.

THE COURT: And each party has a right to submit by 5:00 p.m. on Friday -- that would be November the 3rd -- the name and resume of a proposed receiver. Further, each party will by -- this is not discretionary -- will submit by 5:00 p.m. on Friday a brief outline of the skills or attributes which they think are -- might be appropriate for this receiver to have. Is that agreed?

[TEMPLETON'S COUNSEL]: Yes, sir.

THE COURT: Understood?

[REECE'S COUNSEL]: Understood, Your Honor.

THE COURT: All right. Agreed?

[REECE'S COUNSEL]: Agreed.

[TEMPLETON'S COUNSEL]: Agreed.

Later, the trial court addressed the language of the proposed order appointing a receiver, which indicated the trial court's understanding that both sides agreed to a receiver, just not the details of who would be receiver and the scope of the receiver's authority:

[THE COURT]: . . . The form of the receiver order that's to be drafted should be an order that is -- reflects that it is a determination by the Court that -- that *in light of the stipulation, the Court is -- will appoint a receiver* with the following powers and authorities, stuff. [Emphasis added]

5

As the parties continued to try to work out the details of whether Texas or Nevada receiver law would govern, again, Templeton's counsel, Reece's counsel, and the trial court all agreed on the record that—regardless of the applicable state law and regardless of the scope of the receiver's authority, matters on which the parties did not agree—the parties had in fact stipulated to the appointment of a receiver:

> [REECE'S COUNSEL]: Well, Your Honor, we have in the record now that -- that [the court reporter] has typed the stipulation we had that there were grounds sufficient for the appointment of a receiver and both parties stipulated the need for a receiver --
>
> THE COURT: Right.
>
> [REECE'S COUNSEL]: -- under the applicable -- we'll just say under applicable law. How's that?
>
> THE COURT: That's fine with me.
>
> [TEMPLETON'S COUNSEL]: Fine with me.

Following the October 31, 2017 hearing, Templeton submitted two letters to the trial court concerning the appointment of a receiver, Templeton's proposed receivers, and proposed "agreed" orders for the appointment of a receiver.[4]

---

[4]The November 2, 2017 letter included a proposed receivership order, approved as to form *and* content, and suggested that "[t]he receiver should have the freedom to perform an audit or any other investigation, if he deems it material." The letter also requested that the scope of the receiver's control be expansive: "The receiver should also have control of *all assets* of [Investments] not just those enumerated." [Emphasis added] The letter concluded by explaining that Templeton's proposed order "does not restrict the receiver." The November 3, 2017 letter included the résumés of two individuals that Templeton suggested would have attributes "the receiver must have in this case[.]"

6

In the November 20, 2017 hearing, Hill testified that, as a result of this lawsuit, Investments had incurred "around $495,000 for legal fees and accounting fees."

On December 28, 2017, the trial court appointed J. Robert Forshey as receiver, with duties to include, among other things, a determination of whether the subsidiaries or divisions of Investments should be sold.[5] Templeton appeals from the December 28, 2017 order.

### III.  STANDARD OF REVIEW

The appointment or termination of a receivership is within the appointing court's sound discretion. *Spiritas v. Davidoff*, 459 S.W.3d 224, 231 (Tex. App.—Dallas 2015, no pet.); *Unit 82 Joint Venture v. Int'l Commercial Bank of China, Los Angeles Branch*, 460 S.W.3d 616, 627 (Tex. App.—El Paso 2014, pet.

---

Templeton concluded the letter by stating, "[Templeton] seeks an independent receiver who is employed to dive deeply into the books and records of [Investments]."  As detailed above, Templeton's counsel agreed on the record that a receiver should be appointed.  And Templeton presented the trial court with stipulated facts that Templeton and Reece as directors were deadlocked on whether to pursue the sales of subsidiaries or divisions of Investments, whether to make distributions to shareholders of Investments, and whether distributions and accounting records in December of 2014 were made and if so, were proper.

[5]The pertinent Nevada statute expressly provides for the appointment of a receiver if a corporation's assets are in danger of sacrifice or loss due to litigation.  *See* Nev. Rev. Stat. Ann. § 78.650(e) (West); *Transcon. Oil Co. of Nev. v. Free*, 391 P.2d 317, 319 (Nev. 1964) ("78.650(1) lists 10 circumstances, *any one of which* will authorize the appointment of a temporary receiver upon application by a holder of 10% of the outstanding stock.") (emphasis added).

7

denied) (citing *Gilles v. Yarbrough,* 224 S.W.2d 720, 722 (Tex. Civ. App.—Fort Worth 1949, no writ)). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, such that its ruling was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). An abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

## IV. ANALYSIS

"One who invokes the jurisdiction of the court to appoint a receiver of his property cannot thereafter question the validity of the appointment for want of jurisdiction." *In re Marriage of Davis*, 418 S.W.3d 684, 691 (Tex. App.—Texarkana 2012, no pet.) (quoting *B & W Cattle Co. v. First Nat'l Bank of Hereford*, 692 S.W.2d 946, 951 (Tex. App.—Amarillo 1985, no writ); citing *Cross v. Cross*, 738 S.W.2d 86, 87–88 (Tex. App.—Corpus Christi 1987, writ dism'd w.o.j.)). We hold that Templeton's repeated requests in the trial court that a receiver be appointed bar his challenge in this interlocutory appeal to the appointment of the receiver. *See id.*

8

After oral argument, Templeton submitted a letter brief asserting that he did not agree to the appointment of a receiver. Assuming this to be the case, we alternatively hold that the stipulated facts agreed to by the parties coupled with Appellees' evidence, which includes evidence of $495,000 in litigation and accounting expenses, support the trial court's appointment of a receiver under the Nevada statute referenced in the trial court's order appointing the receiver. *See* Nev. Rev. Stat. Ann. § 78.650(e) (providing for appointment receiver if corporation's assets are in danger of sacrifice or loss due to litigation). Therefore, even in the absence of Templeton's agreement to the appointment of a receiver, the trial court did not abuse its discretion by appointing one under this provision of Nevada law. We overrule Templeton's first and fourth issues claiming that the trial court abused its discretion by appointing a receiver and that the evidence is insufficient to support appointment of a receiver.

In his second issue, Templeton argues that Reece lacks standing to file an intervention because he did not first participate in a day-long mediation prior to further litigation as required by the Rule 11 agreement. Reece points out, and we agree, that Templeton's complaint is fundamentally one that the trial court did not compel mediation. That complaint was not raised in the trial court—Templeton did not file a motion to compel mediation—and is not reviewable in this interlocutory appeal in any event. *See Mustafa v. Rippy*, No. 03-15-00422-CV, 2015 WL 5666902, at *1 (Tex. App.—Austin Sept. 24, 2015, no pet.) (mem. op. on reh'g) ("[W]e lack jurisdiction to review an interlocutory order denying

9

referral of a matter to mediation."); *In re D. C., Jr.*, No. 07-11-00046-CV, 2011 WL 691633, at *1 (Tex. App.—Amarillo Feb. 28, 2011, no pet.) (mem. op.) ("We have no appellate jurisdiction to review an interlocutory order granting or denying referral of a matter to mediation."); *Banc of Am. Inv. Servs., Inc. v. Lancaster*, No. 2-04-00223-CV, 2004 WL 1879597, at *1 (Tex. App.—Fort Worth Aug. 24, 2004, no pet.) (mem. op.) (dismissing for want of jurisdiction attempted appeal from the trial court's order of referral to mediation). We dismiss Templeton's second issue.

In his third issue, Templeton challenges the trial court's denial of his request for an appointment of a custodian under Nevada law. Appellees contend that this issue is also not reviewable by interlocutory appeal. In his reply brief, Templeton appears to concede the point.[6] Templeton directs us to no statute authorizing an interlocutory appeal of a trial court's denial of a request for appointment of a custodian, and we are aware of none.[7] Because we lack jurisdiction over Templeton's third issue, we dismiss it.

---

[6]To the extent Templeton argues in his reply brief that Appellees failed to establish the harm element necessary to support a temporary injunction, this issue was neither raised nor briefed in Templeton's opening brief. Accordingly, it is waived. *See* Tex. R. App. P. 38.3; *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue not raised in the appellant's original brief.").

[7]*See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2017); *see also McGary v. James*, 381 P.3d 639 (Nev. 2012) (relying on *Shapemasters Golf Course v. Shapemasters*, 602 S.E.2d 83, 86–87 (S.C. Ct. App. 2004), to support dismissal of attempted interlocutory appeal of order refusing to terminate

## V. Conclusion

Having overruled Templeton's first and fourth issues and having dismissed his second and third issues, we affirm the trial court's order appointing a receiver.[8]

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and BIRDWELL, JJ.

DELIVERED:  May 24, 2018

---

corporate custodian because "an order appointing or continuing the appointment of a custodian, unlike an order appointing a receiver, is a non-appealable interlocutory order").

[8]After this case was set for submission, Templeton filed a "Motion to Strike Brief of RKR Investments, Inc. and Stay Further Actions by Receiver."  All relief requested in that motion and all other post-submission filings is denied as moot.

11